UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL LEE,                                          :
                                                      :
            Plaintiff                                 :
                                                      :
      v.                                              :  CIVIL NO. 3:CV-05-0068
                                                      :
CHARLES ERICSON, et al.,                              :  (Judge Kosik)
                                                      :
            Defendants                                :

**M E M O R A N D U M**

      Michael Lee, an inmate currently confined at the State Correctional Institution

at Retreat (SCI-Retreat), Pennsylvania, filed this civil rights action pursuant to 42

U.S.C. § 1983.  Named as defendants are seven (7) officials/employees at SCI-Retreat

which include Superintendent Charles Ericson, Deputy Superintendents James

Sommers and Thomas Temperine, Lieutenant Mark Pall, Sergeant Levi Gibbon and

Correctional Officers Mark Lacina and Harry Miles.

      In the complaint Lee alleges that defendants subjected him to cruel and unusual

punishment over a period of time beginning September 11, 2004 through September

30, 2004.  He claims that he was physically assaulted as well as denied food, water,

showers, pens and grievance forms.  He also alleges that he was stripped of his

clothing and bed sheets and spit on. He further claims that he was deprived of
doctor's visits, forced to ingest medication against his will and retaliated against for
filing a lawsuit against defendants Lacina and Gibbon. He seeks injunctive and
compensatory relief.

Presently pending is defendants' motion to dismiss the complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6) filed on March 25, 2005 (Doc. 11). The
motion is fully briefed. For the reasons that follow, the motion will be granted in part
and denied in part.

## I.   **Background**

Lee states that he was placed in the Restricted Housing Unit at SCI-Retreat on
or about September 13, 2004 by defendant Gibbon, after being falsely accused of
flooding the range. Later that same afternoon, Lee was moved to a suicide
observation cell by defendants Gibbon and Pall. When Lee asked defendants why he
was being moved to the observation cell, he was called names and told to not talk.
Lee contends that he was not provided with lunch or supper on this date. He also
claims that the observation cell did not have any water. (Doc. 1, Compl. at 1-2.)

On or about September 14, 2004, Lee claims that he requested water from
defendant Pall. Pall denied the request, as well as a subsequent request for a
grievance form. Later that afternoon, Lee was stripped of his sheets and blankets.
Although he asked why these items were being taken, all he received in response was

2

a slap in the face from defendant Pall.  Lee further alleges that he received no food or water the entire day.  He also states that he was given a misconduct and charged for the sheets that Pall had stepped on and ripped.

On September 15, 2004, Lee states he received a "cold food loaf" to eat that still had ice on it.  (Id. at 2.)  He claims he was also denied water and a shower. When he asked defendant Gibbon for a pen and a misconduct appeal form, his request was denied.  The following day, defendants Pall, Gibbon and Lacina removed him from the cell and handcuffed him to a wooden bench for two (2) hours.  During this time, Lee contends that Lacina physically assaulted and spit on him.  He was also called names including "Nigger Boy, Asshole and Dark Boy."  (Id. at 3.)  Lee claims that he was also punished for a lawsuit he had filed against Gibbon and Lacina. When he was returned to his cell, a shield was placed on the front of the cell door which appeared to have feces on it.  When Lee spoke with defendants Ericson and Temperine, he was told to go lay down on the bed.  He claims he received no water or other food this day.

On September 17, 2004, Lee alleges he was forced to take medication against his will.  When he attempted to avoid taking the pills, he was restrained by Gibbon and Lacina and two additional unknown officers.  Lee was also denied food, and water on this date, as well as stripped of his t-shirt, underwear, socks and mattress. He was left in the cell with no form of clothing and was not provided a shower.  He

further contends that he was denied food and water the following day.

Lee was given a "weight check" on or about September 19, 2004 and thereafter placed on a "medically approved and needed diet" due to all of the weight he lost. (Doc. 1, Compl. at 4.)  He claims, however, that defendants Pall, Gibbon, Lacina and Miles denied him the diet thereby placing his health in jeopardy.  Defendant Gibbon told the prison medical staff not to worry about the officers feeding him.  According to Lee, he received no food or water that day.

On September 20, 2004, Lee asked Lacina if he could see the doctor because he was dizzy.  He was refused and told to submit a grievance however defendants Lacina and Miles refused to provide Lee with a grievance form and pen.  Lee states that he was also given several "frivolous" misconducts on this date as well.  (Id. at 5.)

Several days later, on September 23, 2004, Lacina assaulted Plaintiff when he was called from his cell to have blood taken.  Lacina allegedly pushed Lee into a door while he was handcuffed behind his back.  He was also denied a shower making it two weeks since last receiving shower.  The following day, Lee requested to see a doctor due to back pain he was experiencing from sleeping on a metal bed with no mattress.  His request was denied by defendants Pall, Gibbon and Miles.  He also received no food or water on this date.

Lee claims that he was denied a food loaf by defendants Miles and Lacina on September 26, 2004.  He was told that he was never going to eat or drink again as

long as he was in the R.H.U.  He was also called racial names and given ten (10) misconducts, all with different dates on them and all frivolous.  He was given six (6) more misconducts the following day.

Lee contends that he was denied various appeal and witness forms on September 28, 2004 by defendant Miles.  The following day, he was told by defendants Miles and Pall that he had to go to the medical department and that he "abused this time."  (Id. at 7.)  He claims he was pulled upstairs by Miles and when Lee told Miles to stop, Lee was then kicked by Pall and told to keep moving.  Again, he received no food on this day either.  On September 30,  Lee states he was given a food loaf that had ice on it.

Based on the foregoing, Lee contends defendants deliberate indifference to his health and safety subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  He seeks injunctive and monetary relief.

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 13.)  In their motion, they assert three grounds for dismissal - - (1) failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act; (2) dismissal of certain supervisory defendants; and (3) failure to allege conduct which rises to the level of cruel and unusual punishment.  Lee filed a brief in opposition to the motion on March 1, 2006. (Doc. 22.)

## II.    **12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a claim or claims for "failure to state a claim upon which relief can be granted. . . ."  In evaluating whether a claim is subject to dismissal, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the Plaintiff.  See Mariana v. Fisher, 338 F.3d 189, 195 (3d Cir. 2003).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 44-46 (1957); see also Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).

### A.    **Exhaustion**

Defendants first move to dismiss the complaint for failure to exhaust administrative remedies under the Prison Litigation Reform Act.  Under the PLRA, exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 739 (2001).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

6

The PLRA also "require[s] 'proper' exhaustion, meaning that the inmate must follow the procedural requirements of the prison grievance system." Lock v. Nash, 2005 WL 2465249, at *1 (3d Cir. Oct. 6, 2005)(citing Spruill v. Gillis, 372 F.3d 218, 228-231 (3d Cir. 2004).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill, 372 F.2d at 227-32.  "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 884, 894-95 (S.D.N.Y. 1998)).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  (Id.)  As such, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants.  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement.  37 Pa. Code § 93.9(a)(West 2003); see also DC-ADM 804, Inmate Grievance System Policy.  After an attempt to resolve any problems informally, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review.  An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and

7

can finally appeal to the Secretary of the Department of Corrections Office of Inmate

Grievances and Appeals. See Booth, 206 F.3d at 292, n.2.  The DOC's Administrative

Grievance System outlines the procedural responsibilities of both staff and inmates

under the policy specifying such requirements as the form on which a grievance must

be initiated and the applicable time frames for filing grievances and appeals.

In the instant action, defendants raise the failure to exhaust and point to Lee's

admission on the face of his complaint that he has not exhausted his claims because

he was on suicide watch and was not permitted to have paper or pens.  Defendants

claim that while Lee alleges he was denied requests for pen and paper on September

14, 15, 20 and 28, he does not allege that he was continuously denied the same for the

entire two (2) weeks he was in a segregated cell - -  the period of time which serves as

the basis of the allegations raised in this complaint.  Defendants further allege that he

does not allege he was denied supplies the three (3) months preceding the filing of

this complaint.  Finally, they contend that he clearly had access to a pen and paper

when he filed this action and therefore, should have exhausted his available

administrative remedies.

The court does not read the complaint so strictly.  Lee alleges not only that he

was denied pen, paper and grievance forms, but generally asserts that he was "denied

the right to file a grievance" by defendants.  While defendants argue that Lee was

able to file this action and clearly had use of a pen and paper to do so, it is not entirely

clear when Lee was moved from the suicide watch cell and whether he actually did attempt to file any grievances as he does use the words "appeal form" in his complaint indicating that he may have filed a grievance and was denied appeal forms to continue pursuing his administrative remedies. With all of this said, and in light of the fact that the court considers the exhaustion argument on a motion to dismiss, the motion will be denied.

### B.    Supervisory Defendants

Defendants next argue that defendants Sommers, Ericson and Temperine are subject to dismissal from this action because Lee has failed to allege sufficient participation in the alleged deprivation of his rights under the Constitution. Defendants maintain that Lee's allegations against said defendants are premised on the supervisory roles they hold within the prison and fail to allege actual participation or knowledge of improper conduct.

In a § 1983 suit against a defendant in his or her individual capacity, the defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely upon the operation of respondeat superior. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The filing of complaints with prison officials in the supervisory chain of command may create the necessary actual

knowledge and acquiescence to create personal liability.  Id. at 271 (denying

summary judgment because Plaintiff had evidence that he complained to prison

authorities about alleged constitutional violations.)

In the instant case, other than in the caption of the complaint, Lee fails to even

mention defendant Sommers.  He fails to set forth any allegations against Sommers in

the body of the complaint.  It appears Lee may name Sommers solely upon the basis

of his role as a deputy superintendent at the prison.  Accordingly, his dismissal from

this action is appropriate under the doctrine of respondeat superior.

With regard to Superintendent Ericson and Deputy Superintendent Temperine,

Lee alleges that on September 16, 2004, he "talked to Defendants's (sic) Ericson,

Temperine and was told to go lay in the bed." (Doc. 1, Compl. at 3.)  Defendants

claim that if Lee did not tell Ericson and Temperine the specifics of what was

allegedly happening, then their actions/inactions cannot rise to cruel and unusual

punishment.

While Lee does not specify what he talked to these defendants about in the

complaint, at this point he had been subjected to the alleged conditions of the suicide

observation cell for four (4) days.  He allegedly was deprived of food and water with

the exception of one food loaf on September 15, 2004 which allegedly had ice on it,

deprived of sheets, blankets and clothing, subjected to excessive force, and denied

showers, pens, paper and grievance forms.  Drawing all reasonable inferences in

favor of plaintiff, as we must in deciding a motion pursuant to 12d(b)(6), it is reasonable to assume that Lee may be able to state a claim for relief if he informed these defendants of what was allegedly happening to him.  As such, defendants Ericson and Temperine will not be dismissed at this time.

### C.     Failure to Allege Cruel and Unusual Punishment

The fundamental principles of Eighth Amendment analysis reveal that "only 'the unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by [that Amendment].  Ingraham v. Wright, 430 U.S. 651, 670 (1977) (citations omitted).  Accord Whitley v. Albers, 475 U.S. 312, 319 (1986). This Amendment must be interpreted in accordance with "the evolving standards of decency that mark the progress of a maturing society."  Trop v. Dulles, 356 U.S. 86, 101 (1958).  The right at stake here – to be free from cruel and unusual punishment while incarcerated – has both objective and subjective components.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  While extreme deprivations are required to make out a conditions of confinement claim, see Hudson v. McMillian, 503 U.S. 1, 9 (1992), some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone.  See Wilson, 501 U.S. at 304-05.

Defendants move to dismiss Lee's Eighth Amendment claims contending that his allegations do not amount to a violation of his constitutional rights.  Pursuant to the court's review of the complaint which alleges multiple incidents of excessive

force and the deprivation of food and water on at least six (6) days during his

confinement in the suicide watch cell, the motion to dismiss will be denied.  Without

passing judgment as to the ultimate merits of the claims, Lee will be permitted to

proceed on his complaint.  Defendants will be directed to file an answer to the

complaint.  An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


MICHAEL LEE,                          :
                                      :
            Plaintiff                 :
                                      :
      v.                              :   CIVIL NO. 3:CV-05-068
                                      :
CHARLES ERICSON, <u>et al.</u>,        :   (Judge Kosik)
                                      :
            Defendants                :


# O R D E R

**AND NOW,** this 8th day of March, 2006, in accordance with the

accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    Defendants' Motion to Dismiss (Doc. 11) is **granted in part and denied in part**.  The motion is granted to the extent that defendant Sommers is dismissed from this action.  The motion is denied in all other respects.

    2.    Defendants are directed to file their answer to the complaint within twenty (20) days from the date of this Order.


s/Edwin M. Kosik
United States District Judge